UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| RODNEY J. MCCORMICK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO. 3:09-CV-227 CAN |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

On November 30, 2007, Plaintiff, Rodney J. McCormick ("McCormick"), filed his complaint in this Court. On September 25, 2009, McCormick filed a motion for summary judgment asking this court to remand this matter to the Commissioner pursuant to 42 U.S.C. § 405(g). On January 8, 2010, Defendant Michael J. Astrue, Commissioner of Social Security ("Commissioner"), filed his response. On January 22, 2010, McCormick filed his reply brief. This Court now enters the following opinion and order based upon the pleadings, filings, and administrative record.

**I.    PROCEDURE**

In December 1995, McCormick filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), alleging disability since June 1994 due to due to degenerative disc disease of his lumbar spine, arthritis, stomach problems, and panic attacks. McCormick's applications were denied initially and upon reconsideration. In March 1998, McCormick, appeared and testified at an administrative hearing before an Administrative Law Judge. In April 1998, the ALJ issued a decision finding McCormick not disabled. The

1

ALJ's decision was the final decision of the Commissioner up through April 1998. 20 C.F.R. § 416.1481.

On May 11, 2004, McCormick filed a new claim for DIB and SSI, again alleging that he became disabled in December 1994 due to degenerative disc disease of his lumbar spine, arthritis, stomach problems, and panic attacks. On October 16, 2004, McCormick's applications were denied initially and again upon reconsideration. On February 25, 2005, McCormick filed a timely request for hearing. On January 9, 2007, a different ALJ held a hearing at which McCormick appeared and testified. On November 29, 2007, the second ALJ issued a decision finding McCormick not disabled. The Appeals Council denied McCormick's request for review, leaving the ALJ's decision as the final decision of the Commissioner. 20 C.F.R. § 416.1481. On September 25, 2009, McCormick filed an appeal of that decision in this Court. This Court may enter a ruling in this matter based on the parties' consent, 28 U.S.C. § 636(c), and 42 U.S.C.§ 405(g).

## II. ANALYSIS

### A. Facts

McCormick was 40 years old at the time of the ALJ's decision. McCormick has a high school education and past work as a delivery clerk, forklift operator, and body shop painter. McCormick has not worked since December 1, 1994. He claimed that he stopped working due to panic attacks and pain in his neck.

#### 1. Evidence prior to ALJ Bernstein's decision of April 1998.

In August 1990, McCormick was shot in the right knee and underwent operations in September and October to remove bullet fragments.

In January 1991, McCormick was shot a second time, suffering wounds in the back, near the L2 vertebra. Dr. Roman Filipowicz removed bullet fragments from McCormick's back. An MRI in February 1991 revealed disc problems at L5. Dr. Filipowicz assessed McCormick with post surgical pain and indicated McCormick had a good prognosis.

In March 1994, McCormick was in a car accident and bruised his back. However, an MRI of McCormick's lumbar spine was normal.

In May 1995, McCormick was treated in the emergency room for complaints of abdominal pain and for a burning sensation of his head, with numbness of the left arm and leg. A CT scan of his head was normal. McCormick had a full range of motion in all extremities, a normal neurological examination, and a normal gait. He was assessed with transient pain of unknown etiology.

In July 1995, McCormick was treated in the emergency room for complaints of an anxiety
attack. On August 8, 1995, McCormick was referred to the Swanson Center after presenting to the emergency room with reported symptoms of depression, panic attacks and suicidal ideation McCormick claimed that he was unable to work due to mental health problems and pain in his back. Clifton Titus, Ph.D., indicated that McCormick met the criteria for a diagnosis of major depressive disorder and panic disorder. Dr. Titus assigned McCormick a global assessment of functioning ("GAF") score of 45.[1] McCormick was scheduled to attend weekly individual psychotherapy sessions.

---

[1] The GAF scale reflects a clinician's judgment of an individual's overall level of functioning. See American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, 34 (4th ed. text revision 2000) ("DSM-IV-TR"). A GAF score of 41 to 50 indicates serious symptoms OR any serious impairment in social, occupation, or school functioning. DSM-IV-TR 34.

3

In September 1995, McCormick was treated at the emergency room for complaints of headache, neck pain, and low back pain. X-rays of his lumbosacral spine revealed bulging at L4-5 without evidence of spinal stenosis. However, a CT scan of his head was normal. In October 1995, an MRI of McCormick's lumbosacral spine revealed that degenerative changes and disc bulging at L4-5 had worsened but there was no evidence of nerve root impingement. In August 1996, Dr. Titus performed a clinical assessment of McCormick and reiterated his diagnosis of major depressive disorder and panic disorder and again assigned McCormick a GAF score of 45. In March 1997, McCormick's individual therapy with Dr. Titus was discontinued due to McCormick's non-participation. In July 1997, McCormick underwent a clinical assessment with his case manager and a social worker. McCormick was assessed with major depressive disorder, recurrent, severe, with psychotic features; panic disorder without agoraphobia; and was assigned a GAF score of 40. [2]

In January 1998, McCormick saw Dr. Kora for complaints of headache and neck pain following a car accident the prior month. Dr. Kora diagnosed McCormick with cervical strain recommended that McCormick continue taking a muscle relaxant and anti-inflammatory.

2. <u>The first ALJ's decision of April 1998,</u>

On April 24, 1998, considering most of the foregoing evidence, the first ALJ issued a decision denying McCormick's application for disability. The first ALJ found that McCormick had the following severe impairments: low back pain, right knee pain, and depression. The ALJ concluded that McCormick retained the residual functional capacity ("RFC") to perform light

---

[2] A GAF score of 31 to 40 indicates some impairment in reality testing or communication or major impairment is several areas, such as work, school, family relations, judgment, thinking, or mood. <u>DSM-IV-TR</u> 34.

work that did not require public contact. Based on this RFC, the first ALJ concluded that McCormick was not disabled.

3. New evidence following the first ALJ's decision of April 1998.

In December 1998, McCormick saw Dr. Anil Chawla, a colleague of Dr. Kora, for back pain treatment. Dr. Chawla noted tenderness in McCormick's lower lumbar area but noted that the straight leg raise test was negative and neurological testing was normal.

On May 9, 1999, McCormick was shot a third time suffering wounds to his abdomen, right hand, right thigh, and back. Dr. Rade Pejic removed a bullet from McCormick's abdomen, performed an appendectomy, and closed the wounds in McCormick's hand, thigh, and back. McCormick was discharged on May 16, 1999 with a prescription for Codeine and limited home activity.

In June 1999, McCormick was discharged from treatment with the Swanson Center because McCormick failed to meet the objectives of his treatment plan due to failure to attend and participate.

In April 2000, McCormick saw Dr. Kora again for low back pain and abdominal pain and was prescribed Vioxx and Flexeril. In April 2001, Dr. Kora diagnosed McCormick with narrowing of the L4-5 and L5-1 disc spaces with extensive degenerative changes at the L4-5 level and mild degenerative changes at the L5-S1 level. In May 2001, an MRI of McCormick's lumbar spine revealed severe L4-5 degenerative disc disease without compression. In April 2004, McCormick saw Dr. Kora for complaints of back pain and was prescribed Vasotec, Naprozyn, Flexeril, and Ultram.

On July 15, 2004, Dr. Ralph E. Inabnit conducted a consultative examination of

McCormick on referral from the state agency. On examination with Dr. Inabnit, McCormick had a limited range of motion with respect to his cervical and lumbar spine, but the range of motion of his hips, legs, arms, and shoulders was normal. Neurological testing, sensation, strength, reflexes, and toe and heel walking were also normal. Straight leg raise testing was negative in the sitting position but abnormal in the supine position. Based on this data, Dr. Inabnit indicated that McCormick had intractable chronic low back pain, chronic right knee pain, obesity and hypertension. Dr. Inabnit recommended that McCormick have x-rays and an MRI of his lower back and suggested that McCormick might be a candidate for an epidural or facet block.

On September 28, 2004, Judy A. Hafner, Psy.D., and John T. Heroldt, Ed.D., conducted a consultative evaluation of McCormick on referral from the state agency. On examination, McCormick was fully oriented and cooperative. McCormick scored in the borderline to low average range with regard to memory testing and intellectual functioning. McCormick was diagnosed with a panic disorder without agoraphobia and assigned a GAF score of 60.[3]

On October 5, 2004, Dr. J. Corcoran, a reviewing state agency specialist, reviewed Dr. Inabnit's consultative examination and opined that McCormick could occasionally lift 20 pounds and frequently lift 10 pounds, sit, stand, and walk about 6 hours in an 8-hour workday and engage in unlimited pushing and pulling.

On October 15, 2004, B.R. Horton, Psy.D., a reviewing state agency clinical psychologist,
reviewed Dr. Heroldt's and Dr. Hafner's consultative evaluation and found that McCormick had no

---

[3] A GAF score of 51 to 60 indicates moderate symptoms or any moderate difficulty in social, occupational, or school functioning. DSM-IV-TR 34.

restrictions in daily living; mild difficulties in maintaining social functioning, maintaining concentration, persistence, or pace; and no episodes of decompensation. Dr. Horton concluded that McCormick did not have a severe mental impairment.

In March 2005, McCormick was diagnosed with degenerative dessication and narrowing of the L4-5 disc space with associated osteochondritis, mild neural foraminal encroachment and bulging disc at L4-5, but no evidence of spinal stenosis. In May 2005, Dr. Kora treated McCormick for continued back pain and prescribed an anti-inflammatory and pain medication. In August 2005, pursuant to an MRI, Dr. Kora diagnosed McCormick with moderately severe degenerative changes and a tear of the meniscus in the right knee and prescribed a muscle relaxer and pain medication. In January 2006, an arthrogram and post-arthography MRI of McCormick's right knee revealed osteoarthritic changes in the tibiofemoral (knee) joint, consistent with McCormick's prior knee surgery, and thin cartilage.

At the hearing, January 9, 2007, McCormick testified that he stopped working in 2000 because of neck pain and panic attacks. McCormick stated that he has back pain and pain in several joints. McCormick claimed that he developed memory problems in 1997, that he experienced panic attacks, and that he was taking medications for pain, muscle relaxation, and high blood pressure. He denied any history of alcohol or substance abuse. McCormick testified that he was unable to dress, groom, or bathe himself and was unable to do household chores. McCormick stated that he had close relationships with his mother and fiancé. Additionally, McCormick stated the he had an anger disorder, but he noted that he was last treated for these mental health disorders while incarcerated in 2004. McCormick testified that he sleeps the majority of the day due to side effects from his medication. Finally, McCormick testified that he

needed assistance with self-care and that his mother and girlfriend take care of all of the household duties.

4. The second ALJ's conclusions

Based on the foregoing evidence, the second ALJ concluded that McCormick suffers from the following severe impairments: osteoarthritis, degenerative desiccation and osteochondritis of L4-L5 with bulging disc. Unlike the first ALJ, however, the second ALJ did not consider McCormick's mental impairment to be severe. The second ALJ found that McCormick has an RFC to perform the full range of light work. As such, this ALJ concluded that McCormick is capable of performing past relevant work as a fork-lift driver and is, therefore, not disabled.

B. Standard of Review

The standard of review for an ALJ's decision is whether it is supported by substantial evidence and free of legal error. See 42 U.S.C § 405(g); Briscoe v. Barnhart, 425 F.3d 345, 351 (7th Cir. 2005); Haynes v. Barnhart, 416 F.3d 621, 626 (7th Cir. 2005); Golembiewski v. Barnhardt, 322 F.3d 912, 915 (7th Cir. 2003). Substantial evidence means such relevant evidence as a reasonable mind might accept to support such a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1972). A reviewing court is not to substitute its own opinion for that of the ALJ's or to re-weigh the evidence, but the ALJ must build a logical bridge from the evidence to his conclusion. Haynes, 416 F.3d at 626. An ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. Lopez v. Barnhart, 336 F.3d 535, 539 (7th Cir. 2003). However, an ALJ's legal conclusions are reviewed de novo. Haynes, 416 F.3d at 626.

C. McCormick's motion for summary judgment or remand

To be entitled to benefits under 42 U.S.C. §§ 423, 1321(a), McCormick must establish that she was "disabled." See 42 U.S.C. § 423(a)(1)(D). The Social Security Act defines "disability" as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).

The Social Security regulations prescribe a sequential five-part test for determining whether a claimant is disabled. The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's RFC leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(I)-(v), 416.920; Briscoe, 425 F.3d at 352. If the ALJ finds that the claimant is disabled or not disabled at any step, he may make his determination without evaluating the remaining steps. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If there is an affirmative answer at either step three or step five, then there is a finding of disability. Briscoe, 425 F.3d at 352. At step three, if the impairment meets any of the severe impairments listed in the regulations, the impairment is acknowledged by the Commissioner. See 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. app. 1, subpt. P, § 404.

However, if the impairment is not so listed, the ALJ assesses the claimant's RFC, which in turn is used to determine whether the claimant can perform her past work under step four and whether the claimant can perform other work in society under step five. 20 C.F.R. §

404.1520(e). The claimant bears the burden of proof on steps one through four, but the burden shifts to the Commissioner at step five. Id.

McCormick asserts four arguments regarding the ALJ's assessment of his case. First, McCormick argues that the ALJ wrongly concluded that McCormick's mental condition was not severe. Second, McCormick contends that the ALJ made an erroneous credibility determination. Third, McCormick alleges the ALJ didn't incorporate all of the McCormick's limitations into his residual functional capacity ("RFC") finding. Finally, McCormick alleges that the ALJ improperly found him capable of performing him past relevant work as a forklift operator.

> 1. The ALJ's conclusion that McCormick does not have a severe mental impairment is not supported by substantial evidence in the record.

McCormick contends the ALJ erred when he concluded that McCormick does not have a severe mental impairment. The ALJ must "minimally articulate [her] reasons for crediting or rejecting evidence of disability" and must "build an accurate and logical bridge between the evidence and the result." Scivally v. Sullivan, 966 F.2d 1070, 1076 (7th Cir. 1992), Sarchet v. Chater, 78 F.3d 305, 307 (7th Cir. 1996), 78 F.3d 305, 307 (7th Cir. 1996); McKinnie v. Barnhart, 368 F.3d 907, 910 (7th Cir. 2004) ("[t]he ALJ need not address every single piece of evidence in his decision, . . . but his analysis must build an accurate and logical bridge between the evidence and his findings"); Shramek v. Apfel, 226 F.3d 809, 811 (7th Cir. 2000).

In 1998, the first ALJ determined that McCormick had a severe mental impairment; but he ultimately concluded that the mental impairment was not disabling, either alone or in combination with McCormick's other impairments. However, due to the sequential nature of the disability determination, the fact that the first ALJ found McCormick's mental impairment to be severe meant that the first ALJ included the limitations of McCormick's mental impairments into

his RFC determination.

In contrast, the second ALJ discounted all of McCormick's evidence regarding his mental impairments because the same evidence had been presented at the prior hearing before the first ALJ. Finding "no basis for reopening [McCormick's] prior unfavorable decision," entered by the first ALJ, the second ALJ concluded that McCormick's mental impairments were not-severe. The effect of this conclusion was that, unlike the first ALJ, the second ALJ did not consider the limiting effects of McCormick's mental limitations in his latter RFC determination.

This is facially errant. Had the second ALJ actually relied upon the first ALJ's conclusions like he contended, the second ALJ would have at least concluded, like the first, that McCormick's mental impairments were severe. However, the second ALJ failed to either follow or reject the first ALJ's conclusions regarding the severity of McCormick's mental impairments. Instead, it appears that the second ALJ may have confused the first ALJ's conclusion regarding disability with the same ALJ's conclusion regarding severe impairments. Alternatively, at a minimum, the second ALJ's severity determination is insufficiently explained for this Court to understand the relationship between the two opinions and the reasons for not considering the limiting effects of McCormick's mental impairments. Given the sequential nature of the disability determination and the evidentiary effect of rejecting an impairment as not severe, the second ALJ's failure to fully explain his determination or incorrect reliance on the first ALJ's determination appears to have frustrated the entirety of his determination.

Even though McCormick did not submit new evidence to establish new limiting effects, as a result of his mental impairments, than what had previously been considered by the first ALJ, this does not necessarily mean that McCormick's mental impairments are any less severe than

11

before. If the second ALJ intended to disagree with the first ALJ's conclusion regarding the severity of McCormick's mental impairments, he should have explained the facts warranting a lesser finding than that of the first ALJ. Alternatively, if the second ALJ intended to make a finding consistent with the first, he should have concluded that the mental impairments were severe, as the first ALJ concluded. Having so concluded, the second ALJ would then have had an affirmative duty, like the first ALJ, to consider the combined impairments of all of McCormick's limitations, including past evidence of mental impairments, regardless of the lack of new facts proffered by McCormick. See Golembiewski v. Barnhart, 322 F.3d 912, 918 (7th Cir. 2003) (An ALJ is required to consider the aggregate effect of the "entire constellation of ailments" affecting a disability insurance claimant).

Because an ALJ must consider the combined effect of all of the claimant's severe impairments when formulating his RFC finding, the second ALJ's exclusion of a formally-determined severe impairment renders his ultimate RFC finding insufficiently articulated and unsupported by substantial evidence in the record. Accordingly, remand is necessary for the ALJ to either: (1) explain his reasoning for considering McCormick's mental impairment to be less severe than the first ALJ's decision, or (2) conclude that the mental impairments are severe and consider the limiting effects of McCormick's mental impairments in combination with the limiting effects of McCormick's other severe impairments.

    2.    <u>The ALJ's credibility finding is supported by substantial evidence</u>.

In addition, McCormick alleges that the ALJ's determination of his credibility was erroneous. Since an ALJ is in a special position where he can hear, see, and assess witnesses, his credibility determinations are given special deference, and as a result, his credibility

determinations will only be overturned if they are patently wrong. <u>Jens v. Barnhart</u>, 347 F.3d 209, 213 (7th Cir. 2003): <u>Zurawski v. Halter</u>, 245 F.3d 881, 887 (7th Cir. 2001). <u>See</u> <u>also</u> <u>Prochska v. Barnhart</u>, 454 F.3d 731, 738 (7th Cir. 2006) (<u>holding</u> "[o]nly if the trier of fact grounds his credibility finding in an observation or argument that is unreasonable or unsupported...can the finding be reversed."). However, as a bottom line, Social Security Ruling 96-7p requires an ALJ to consider the entire case record and articulate specific reasons to support his credibility finding. <u>Golembiewski v. Barnhart</u>, 322 F.3d 912, 915 (7th Cir. 2003); <u>Steele v. Barnhart</u>, 290 F.3d 936, 942 (7th Cir. 2002). While an ALJ is not required to provide a "complete written evaluation of every piece of testimony and evidence," an ALJ cannot simply state that an individual's allegations have been considered or that the individual's allegations are not credible. <u>Rice v. Barnhart</u>, 384 F.3d 363, 370 (7th Cir. 2001); S.S.R. 96-7p. Also, the ALJ may not simply recite the factors that are described in the regulations for evaluating symptoms. <u>Zurawski</u>, 245 F.3d at 887; S.S.R. 966-7p.

     McCormick contends the ALJ made an improper credibility finding, characterizing the ALJ's determination as "vague." This Court agrees. Indeed, this Court notes that the ALJ's credibility finding consists entirely of bolierplate language and provides no explanation of the weight afforded to McCormick's testimony and the reasons for do so. Such a finding, or lack of one, is entirely insufficient to withstand review by this Court, even considering the typical deference afforded to such determinations. Instead, the law is clear that the ALJ must articulate specific reasons for discrediting McCormick's personal allegations of the limiting effects of his impairments. <u>See</u> <u>Golembiewski</u>, 322 F.3d at 915. Simply put, this Court can only speculate regarding the reason for discrediting McCormick's testimony and the evidence used to support

13

that conclusion.

As such, the ALJ committed error by not articulating a clear credibility finding and the specific reasons for his finding. An ALJ's opinion cannot stand without an adequate discussion of the issues. See Green, 51 F.3d at 101; Herron, 19 F.3d at 333. On remand, the ALJ must provide a more robust credibility finding, clearly explaining the weight afforded to McCormick's testimony, in regards to the stated limiting effects of his impairments, and fully explaining the reasons for the weight afforded to McCormick's testimony.

       3.       The ALJ's RFC determination is not supported by substantial evidence.

As a result of the ALJ'a errors at step two and three of the sequential disability analysis, the ALJ's RFC finding must also be reconsidered on remand. In particular, because the ALJ's determinations regarding the severity of mental impairments and McCormick's credibility are not sufficiently articulated to withstand review, the ALJ must issue a new RFC finding after first proffering newly articulated findings on both issues. Because of the sequential structure of the disability analysis, this finding is necessary to ensure a substantially supported RFC finding.

Also on remand, the ALJ is encouraged to clearly articulate his RFC in terms of McCormick's remaining physical and mental abilities, considering both the individual and combined limiting effects of all of McCormick's severe impairments. This Court notes that the ALJ failed to do so in the immediate opinion and indicates that the ALJ's lack of a clear RFC finding would not have withstood review of this Court, even if the ALJ had made proper step two and step three findings.

       4.       The ALJ's step four determination was not proper.

Similarly, because a new RFC finding is necessary in this case, the ALJ must also make a

new step four determination, regarding McCormick's ability to perform his past work.

## III. CONCLUSION

The ALJ's determination regarding the severity of McCormick's mental impairments is not sufficiently articulated nor supported by substantial evidence in the record. In addition, the ALJ's credibility finding is similarly insufficiently articulated. As such, both the ALJ's RFC and step four conclusions are not supported by substantial evidence in the record. As a result, this Court considers remand necessary and **GRANTS** McCormick's motion for remand. [Doc. No. 1].

**SO ORDERED**

Dated this 10th Day of May, 2010.

S/Christopher A. Nuechterlein  
Christopher A. Nuechterlein  
United States Magistrate Judge